"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARROW FORMULAS, INC., <br><br>Plaintiff, <br><br>vs. <br><br>STEADFAST INSURANCE COMPANY, <br><br>Defendant. | CASE NO. 2:10-CV-801-JST (SSx) <br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Jarrow Formulas, Inc. filed this action against Defendant Steadfast Insurance Company, alleging claims for (1) breach of contract; (2) declaratory relief; and (3) breach of the covenant of good faith and fair dealing.  (Compl., Doc. 1.)  Plaintiff alleges that Defendant had a duty to defend Plaintiff against underlying claims made in both arbitration and litigation, pursuant to a general liability insurance policy Plaintiff purchased from Defendant.  (*Id.* ¶ 4.)  Defendant filed a Motion for Summary Judgment as to all claims and Plaintiff filed a Cross-Motion for Partial Summary Judgment as to its first two claims.  Having considered the parties' papers and heard oral argument, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.

**I. Background**

Defendant insured Plaintiff under a "Commercial General Liability Policy Claims Made, Defense Costs Inside Limits," policy no. SCC 3987911 06, for the policy period of February 16, 2008, to February 16, 2009 (the "Policy").  (Pl.'s Statement of Disputed Facts ("Pl.'s Disp. Facts"), Doc. 47, ¶ 1.)  Pursuant to the Policy's Coverage B "Personal and Advertising Injury Liability," Defendant must "pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'personal injury' or 'advertising injury' to which this insurance applies."  (*Id.* ¶ 2.)  Personal injury coverage does not extend to "advertising, publishing, broadcasting or telecasting done by or for [Plaintiff]."  (*Id.* ¶ 4.)  The Policy defines "advertising injury" to mean, "injury arising out of one or more of the following offenses: (a) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . . [C]ommitted in the course of advertising your goods or products . . . ."  (*Id.* ¶ 5.)

The Policy excludes any advertising injury arising out of (1) "breach of contract, other than misappropriation of advertising ideas under implied contract;" (2) "[t]he failure

of goods, products, or services to conform with advertised quality or performances;" (3) "[i]nfringement or dilution of intellectual property rights including, without limitation, copyright, title, slogan, trademark, service mark, trade dress, service dress, trade name, patent or other intellectual property rights, whether direct, contributory or by inducement;" and (4) "[t]he misappropriation of advertising ideas or styles of doing business." (*Id.* ¶¶ 6-9.) Finally, the Policy defines "covered expenses" to include all expenses incurred for investigation, adjustment, and defense of claims and suits, including attorney's fees, expert and witness fees, and court costs. (Def.'s Statement of Disputed Facts ("Def.'s Disp. Facts"), Doc. 65, ¶ 11.)

On August 15, 2008, Bio Minerals ("BM") filed a lawsuit against Plaintiff in the United States District Court for the Central District of California captioned *Bio Minerals n.v. v. Jarrow Formulas, Inc.*, Case No. CV08-5384 ("Underlying Action"). (Pl.'s Disp. Facts ¶ 10.) The Underlying Action included five claims: (1) False Descriptions and Representations; (2) Breach of Contract; (3) Trade Dress Infringement, Federal Unfair Competition And False Designation of Origin; (4) Breach of Contract; and (5) Intentional Interference with Economic Relationship. (*Id.* ¶ 11.) On the same day, BM also filed a Memorandum of Points and Authorities in support of an *ex parte* application for emergency relief, which restated the same allegations. (Def.'s Disp. Facts ¶ 18.)

As alleged in the Underlying Action, BM is the manufacturer of "BioSil," "a silicon compound intended for use as a food supplement," and a registered trademark owned by BM. (Pl.'s Disp. Facts ¶ 12.) BM maintained that from October 1, 2004, until December 31, 2007, Plaintiff was licensed to sell BioSil in the United States. (*Id.* ¶¶ 13-14.) BM alleged that around August 2, 2008, Plaintiff began advertising, promoting, and selling its own version of a liquid silicon product for human consumption called "JarroSil." (*Id.* ¶ 15.) The Underlying Action also included the following allegations:

> [Plaintiff's] misrepresentations of the nature, characteristics and qualities of JarroSil, was intended to confuse and deceive consumers into mistakenly believing that JarroSil is in some way

3

associated, affiliated or connected with Bio Minerals' BioSil, has caused and is likely to cause confusion, and mistake, and through deception cause consumers, encountering JarroSil to mistakenly assume that JarroSil is the researched BioSil product.

(Def.'s Disp. Facts ¶ 22.)

[Plaintiff's] unauthorized use of the Published Studies including the BioSil Calf Study results in conjunction with the promotion and advertising of its products misrepresents the nature, characteristics and qualities of [Plaintiff's] goods, all to the detriment of consumers and Bio Minerals, with the express intent to falsely describe or represent such goods offered in conjunction with [Plaintiff's] name and to trade upon the reputation and goodwill of Bio Minerals.

(*Id.* ¶ 23.)

[Plaintiff's] unauthorized use of a colorable imitation BioSil Trade dress falsely indicates that Bio Minerals or BioSil are connected with, sponsored, endorsed, authorized, or approved by, or affiliated with [Plaintiff], or that [Plaintiff] is connected with sponsored, endorsed, authorized, or approved by, or affiliated with Bio Minerals and BioSil.

(*Id.* ¶ 24.)

[Plaintiff] has, very aggressively, taken deliberate and unlawful steps to exacerbate that confusion, in order to, deceive the public, to believe that its product, JarroSil . . . with a similar name, is the BioSil product. That fraud should not be tolerated.

(*Id.* ¶ 25.)

[Plaintiff] has engaged in promoting and advertising its new product JarroSil to the public in interstate commerce including

4

|   |   |   |
|---|---|---|
| 1 |  | customers who formerly purchased BioSil from [Plaintiff], using |
| 2 |  | various promotional materials. At the Trade Show in Las Vegas, |
| 3 |  | [Plaintiff] prominently displayed at its sales booth mock up boxes |
| 4 |  | of the intended packaging of [Plaintiff's] liquid silicon |
| 5 |  | supplement JarroSil, as well as promotional materials about the |
| 6 |  | new product . . . . In [one] advertisement under the heading |
| 7 |  | "JarroSil and Skin" [Plaintiff] states: "Bioavailable silicon was |
| 8 |  | shown to increase collagen concentration up to 12.5% in the |
| 9 |  | dermis of the skin of calves." In so doing [Plaintiff] has |
| 10 |  | referenced the study done on BioSil to promote and sell JarroSil |
| 11 |  | without stating that the study used a silicon product other than |
| 12 |  | that in JarroSil and without establishing that JarroSil is |
| 13 |  | bioequivalent to BioSil. |
| 14 | (*Id.* ¶ 26.) | |
| 15 |  | To promote the sale of JarroSil by referencing the results of the |
| 16 |  | Published Studies, including the BioSil Calf Study, is to falsely imply |
| 17 |  | that JarroSil is the equivalent of BioSil and to misrepresent the nature, |
| 18 |  | characteristics and qualities of JarroSil. |
| 19 | (*Id.* ¶ 27.) | |
| 20 |  | [Plaintiff's] representation to the public, that the silicon in its |
| 21 |  | product has been scientifically shown to do so, is a false |
| 22 |  | statement. Furthermore, to do so, is to falsely imply that JarroSil |
| 23 |  | is the equivalent of BioSil and to misrepresent the nature, |
| 24 |  | characteristics and qualities of JarroSil for the purpose of causing |
| 25 |  | consumer deception and trading upon and profiting from proven |
| 26 |  | health and beauty benefits of BioSil. To do so, is to mistakenly |
| 27 |  | associate JarroSil and [Plaintiff] with BioSil and Bio Minerals. |
| 28 | (*Id.* ¶ 28.) | |

5

> The BioSil Calf Study does not show, contrary to [Plaintiff's] representation that bioavailable silicon in general, was shown to increase collagen concentration in the dermis of the skin of calves. [Plaintiff's] representations to the public, that the silicon in its product has scientifically shown to do so, are a false statement.

(*Id.* ¶ 30.)

> By applying the virtually identical trade dress to JarroSil, [Plaintiff] has intentionally sought to create a likelihood of confusion, to cause mistake or to deceive health benefits, all to the detriment of Bio-Minerals and with the express intent to trade upon the reputation and goodwill of BioSil.

(*Id.* ¶ 34.) These allegations were reasserted in BM's "Response to Demand for Arbitration" filed on August 27, 2008, in reply to Plaintiff's demand for arbitration with the American Arbitration Association, AAA Proceeding Number 50 155 T 00297 08. (*Id.* ¶¶ 31, 32.)

Plaintiff sent both BM's Complaint and Response to Demand for Arbitration to Defendant on September 10, 2008, and requested that Defendant provide a defense. (*Id.* ¶ 33.) Defendant disclaimed coverage on November 7, 2008. (*Id.* ¶ 36.) Plaintiff defended claims in the Underlying Actions without Defendant's assistance, and ultimately achieved a complete and final dismissal with prejudice of all claims. (*Id.* ¶ 42-43.) Plaintiff advised Defendant in writing on December 30, 2009, that it had successfully defended all claims and counterclaims and requested Defendants pay the $446,543.35 in defense costs incurred by Plaintiff. (*Id.* ¶ 44.) Defendant has not paid Plaintiff any of the requested defense costs. (*Id.* ¶ 45.) On February 3, 2010, Plaintiff filed the instant lawsuit. (*Id.* ¶ 40.)

**II. Legal Standard**

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular materials in the record or showing that the materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Reference to the record may include citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *Id.* at 323. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks and citation omitted).

**III.    Discussion**

Under California law, "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993). "It is a settled rule that the insurer must look to the facts of

1  the complaint and extrinsic evidence, if available, to determine whether there is a potential
2  for coverage under the policy and a corresponding duty to defend." *Ameron Int'l Corp. v.*
3  *Ins. Co. of Penn.*, 242 P.3d 1020, 1028 (Cal. 2011) (internal quotation marks and citation
4  omitted); *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176-77 (Cal. 1966) ("Since modern
5  procedural rules focus on the facts of a case rather than the theory of recovery in the
6  complaint, the duty to defend should be fixed by the facts which the insurer learns from the
7  complaint, the insured, or other sources."). On the other hand, "[a]n insured may not
8  trigger the duty to defend by speculating about extraneous 'facts' regarding potential
9  liability or ways in which the third party claimant might amend its complaint at some
10 future date." *Gunderson v. Fire Ins. Exch.*, 44 Cal. Rptr. 2d 272, 277 (Cal. Ct. App. 1995).

11        In order to prevail in an action seeking declaratory relief on the issue of the duty to
12 defend, "the insured must prove the existence of a *potential for coverage*, while the insurer
13 must establish *the absence of any such potential*." *Montrose Chem. Corp. v. Superior Ct.*,
14 861 P.2d 1153, 1161 (Cal. 1993). Thus, to prevail on its Motion for Summary Judgment,
15 Defendant must demonstrate that, as a matter of law, there was no possibility for coverage
16 under the Policy for any potential causes of action based on the facts set forth in BM's
17 lawsuit and arbitration against Plaintiff. In addition, "the duty to defend must be assessed
18 at the very outset of a case." *Total Call Int'l, Inc. v. Peerless Ins. Co.*, 104 Cal. Rptr. 3d
19 319, 324 (Cal. Ct. App. 2010) (quoting *Pardee Constr. Co. v. Ins. Co. of the W.*, 92 Cal.
20 Rptr. 2d 443, 449 (Cal. Ct. App. 2000)). Therefore, the fact that the Underlying Action
21 has since been settled does not affect the Court's analysis of Defendant's duty to defend.

22        Plaintiff argues that Defendant had a duty to defend pursuant to the Policy, because
23 the facts of the Underlying Action and arbitration could have supported a claim for the
24 advertising injury of implied disparagement under California state law.[1] "In general,

---

[1] The Lanham Act also allows for product disparagement claims in cases in which there is a "misrepresentation of 'the nature, characteristics, qualities, or geographic origin' of 'another person's goods, services, or commercial activities.'" *Freecycle Network, Inc. v. Oey*, 505 F.3d
    (footnote continued)

8

1  interpretation of an insurance policy is a question of law and is reviewed . . . under settled
2  rules of contract interpretation." *Ameron*, 242 P.3d at 1024; *see also Safeco Ins. Co. of*
3  *Am. v. Robert S.*, 28 P.3d 889, 893 (Cal. 2001) ("Insurance policies are contracts and
4  therefore subject to the rules of construction governing contracts."). "A contract must be
5  so interpreted as to give effect to the mutual intention of the parties as it existed at the time
6  of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.
7  "When a contract is reduced to writing, the intention of the parties is to be ascertained
8  from the writing alone, if possible," *id.* § 1639, thus, "[t]he language of a contract is to
9  govern its interpretation, if the language is clear and explicit, and does not involve an
10 absurdity." *Id.* § 1638. "An insurance policy provision is ambiguous when it is
11 susceptible of two or more reasonable constructions." *Ameron*, 242 P.3d at 1024. If the
12 terms are ambiguous or uncertain, the provision "must be interpreted in the sense in which
13 the promisor believed, at the time of making it, that the promisee understood it." Cal. Civ.
14 Code § 1649. This rule is not without limits, protecting only "the objectively reasonable
15 expectations of the insured." *Safeco*, 28 P.3d at 893 (citation omitted).

16       Plaintiff argues that the factual allegations in the Underlying Action have the
17 potential to support a claim under California law for implied product disparagement. The
18 parties do not dispute that the Policy, by its explicit terms, covers "disparagement."
19 Rather, the parties dispute whether the allegations in BM's Complaint are sufficient to
20 demonstrate a potential for "disparagement" coverage. Thus, the Court first reviews the
21 elements of a product disparagement claim. "Generally, tortious conduct of this kind
22 involves the imposition of liability for injuries sustained through publication to third
23 parties of a false statement affecting the plaintiff." *Total Call Int'l*, 104 Cal. Rptr. 3d at
24 326 (internal quotation marks and citation omitted). Moreover, in order to comply with

---

898, 903 (9th Cir. 2007) (quoting 15 U.S.C. § 1125(a)(1)(B)). Plaintiff's argument, however, appears to be premised on a potential "disparagement by implication" claim actionable under California law. (*See* Pl.'s Mot., Doc. 41, at 13.) In any event, Plaintiff does not assert that there is any broader scope to the potentially covered claim if it were analyzed under the Lanham Act.

1  First Amendment requirements, to make a claim of disparagement at the pleading stage a
2  plaintiff must allege both that "the injurious falsehood 'specifically refer' to the derogated
3  person or product" and "that 'the statement at issue either expressly mentions him or refers
4  to him by reasonable implication.'"  *Id.* (quoting *Blatty v. New York Times Co.*, 728 P.2d
5  1177, 1185 (Cal. 1986)); *see also E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590
6  F. Supp. 2d 1244, 1252 (N.D. Cal. 2008).
7       Defendant argues that the Underlying Action, at best, makes a claim of failure to
8  perform as advertised.  (Def.'s Reply, Doc. 61, at 11.)  The Court agrees and finds *Total*
9  *Call International* to be instructive on this point.  In *Total Call International*, a phone card
10  provider, TCI, filed suit against its insurer for failing to defend TCI in an underlying
11  action, which TCI alleged was covered by the policy purchased by TCI.  104 Cal. Rptr. 3d
12  at 322.  In the underlying action, TCI was sued by a competitor who alleged that TCI
13  undercut the phone card market and then misrepresented to phone card consumers the
14  number of minutes the consumer would receive on a phone call when using TCI's prepaid
15  cards.  *Id.* at 324-25.  The competitor alleged that TCI's conduct damaged the competitor's
16  reputation, as well as the reputation of the prepaid calling industry; took a significant share
17  of the competitor's business; and destroyed the brand loyalty built up by the competitor.
18  *Id.* at 325.  TCI's insurance company denied a defense, arguing that the underlying
19  allegations were outside the policy's coverage for advertising injury and were otherwise
20  barred from coverage by a nonconformity exclusion which applied to advertising injury
21  "arising out of the failure of goods, products, or services to conform with any statement of
22  quality or performance made in [the insured's] 'advertisement.'"  *Id.* at 322, 327.  The
23  court agreed, finding that the statements did not meet the elements of a product
24  disparagement claim because "the complaint contain[ed] no allegations suggesting that the
25  falsehoods met the specific reference requirement."  *Id.* at 327.  Further, the court
26  concluded that the underlying action's allegations that TCI's advertising misrepresented
27  the quality or price of its own product, was barred by the nonconformity exclusion.  *Id.* at
28  328.

1    Here, Plaintiff's offending advertisements stated that "Bioavailable silicon was
2 shown to increase collagen concentration up to 12.5% in the dermis of the skin of calves."
3 (Doc. 38, Ex. A ¶ 26.)  The Underlying Action alleges that the study upon which this
4 figure is based was performed using BioSil only; thus, the study "does not show, contrary
5 to [Plaintiff's] representation that bioavailable silicon, in general, was shown to increase
6 collagen concentration in the dermis of the skin of calves."  (*Id.* ¶ 28.)  Instead, the study
7 shows only "that when Bio Minerals' BioSil product was administered to calves[,]
8 collagen concentration in the dermis of their skin increased compared to placebo."  (*Id.*)
9 BM thus alleged that "referencing the results of the BioSil Calf Study . . . falsely impl[ies]
10 that JarroSil is the equivalent of BioSil and . . . misrepresent[s] the nature, characteristics
11 and qualities of JarroSil."  Further, BM alleged that this confusion was compounded by
12 Plaintiff's imitation of BioSil's trade dress, both in the packaging of JarroSil, and in using
13 a name that was similar to BioSil's.  (*Id.* ¶¶ 31, 46.)  Thus, customers would "mistakenly
14 associate JarroSil" and Plaintiff with BioSil and BM, "pass off JarroSil as BioSil," and
15 "trade on and profit from BioSil's reputation and goodwill."  (*Id.* ¶ 29.)

16    BM conceded that the referenced calf study was "the only study ever published that
17 tested whether BioSil *or any bioavailable silicon product* increased the collagen
18 concentration in the dermis of the skin of calves . . . ."  (*Id.* ¶ 27 (emphasis added).)
19 Further, although BM chose for purposes of the litigation to refer to the study as the
20 "BioSil Calf Study," BM did not allege that the study was so titled; thus, the Court
21 concludes that a reference to the study was not, by implication, a reference to BioSil.
22 Therefore, as was the case in *Total Call International*, the Court concludes that Plaintiff's
23 alleged false advertisements do not meet the specific reference element of a product
24 disparagement claim.  Plaintiff argued at the hearing that the specific reference element of
25 a product disparagement claim was met when BM alleged in the Underlying Action that
26 Plaintiff referenced the calf study in which BioSil is referenced, even though Plaintiff
27 neither boasted of its superiority over other brands of bioavailable silicon, nor referred to
28 BM or BioSil by name.  The Court notes that a "reasonably implied" reference to a

11

1 specific derogated person or product is already an expansion of the "specific reference"
2 element in a product disparagement claim, which is itself limited by the First Amendment.
3 *See Total Call Int'l*, 104 Cal. Rptr. 3d at 326.  Plaintiff is essentially arguing for an even
4 more attenuated connection to fulfill the element which requires a "specific reference";
5 Plaintiff has failed to persuade the Court that it can or should further expand the specific
6 reference requirement.  Instead, the Court concludes that at most, the Underlying Action
7 alleged that Plaintiff falsely advertised the benefits of JarroSil by falsely suggesting that
8 JarroSil would perform as shown in the study.  Again, as in *Total Call International*, the
9 Court concludes that this falls within the Policy's exclusion for advertising injury arising
10 out of "the failure of goods, products or services to conform with advertised quality or
11 performance."  (Pl.'s Disp. Facts ¶ 7.)

12       Plaintiff's reliance on *E.piphany* to support its argument that BM alleged that
13 Plaintiff disparaged BioSil by implication is misplaced.  Although *E.piphany* was also a
14 duty to defend case brought by an insured against its insurer on the basis of the potential
15 for a claim of product disparagement by implication, the factual allegations of the
16 Underlying Action were very different.  *See E.piphany*, 590 F. Supp. 2d at 1248-49.
17 Unlike the case before the Court, in *E.piphany*, the insured argued that the underlying
18 complaint, brought by one of its direct competitors, alleged that the insured falsely stated
19 that it was the *only* producer of a certain product, resulting in damage to the competitor's
20 market share, sales, and reputation.  *Id.* at 1253.  Thus, the district court, relying on *Blatty*,
21 held that the factual allegations could support a claim for product disparagement by
22 implication; "[t]he gravamen of the Underlying Complaint, therefore, is that [the insured]
23 made false claims about the superiority of its own products, which clearly and necessarily
24 implied the inferiority of [the competitor's] competing products, resulting in damages to
25 [the competitor]."  *Id.*

26     Here, BM did not allege that Plaintiff claimed that it was the only producer of a
27 superior product.  Indeed, an equivalent situation would require BM to have alleged that
28 Plaintiff falsely advertised that JarroSil was the only bioavailable silicon product shown to

have increased the collagen in the dermis of calves by up to 12.5%. By making an allegedly false claim about the superiority of JarroSil, Plaintiff would have necessarily implied the inferiority of all other bioavailable silicon, including BioSil. Because this did not happen here, the Court concludes that Plaintiff's statement referencing the calf study, by itself, would not support a claim for product disparagement. The Court also concludes that, in this instance, the potentially infringing trade dress would have no bearing on an implied product disparagement claim.

The Court finds Plaintiff's reliance on *Michael Taylor Designs, Inc. v. Travelers Property Casualty Co.* to be similarly unpersuasive, due to the differences in the allegations of the Underlying Action. In *Michael Taylor*, the plaintiff in the underlying complaint alleged that the insured advertised that it was selling the plaintiff's furniture, when in fact it was selling imitation knock-offs of inferior quality. ---F. Supp. 2d---, No. C-10-2432 RS, 2011 WL 221658, at *5 (N.D. Cal. Jan. 20, 2011). The district court held that the publication that attempted to pass off the allegedly infringing inferior products was not, by itself, sufficient to support a potential claim for disparagement. *Id.* at *6. Rather, the underlying complaint alleged that customers, after being enticed by the misleading publication, were "steered" to the imitation products. *Id.* "The term 'steered' fairly implies some *further* statements, presumably oral, were being made by [the insured's] personnel to convey the information that the imitation products were the [plaintiff's] furniture depicted in the brochures." *Id.* Here, there are no allegations that similarly imply further false statements were made.

In short, the Court is not persuaded that the allegations in the Underlying Action are sufficient to support a claim for implied product disparagement. Because there was no potential for coverage, Defendant had no duty to defend Plaintiff in the Underlying Action and arbitration with BM. *See Montrose*, 861 P.2d at 1161.

13

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment.

DATED: April 12, 2011                              **JOSEPHINE STATON TUCKER**
                                                   UNITED STATES DISTRICT JUDGE